**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| DOLORES R. LAMAR, |
| *Plaintiff*, |
| v. |
| HOGAN LOVELLS US LLP, |
| *Defendant*. |

Civil Action No. 25-2097 (TJK)

**<u>MEMORANDUM OPINION</u>**

Dolores Lamar sues her employer, the law firm Hogan Lovells, under Title VII and two other civil rights statutes, alleging that the firm discriminated against her based on her race and retaliated against her. Most of Lamar's claims stem from a time in 2018 when she worked in the firm's intellectual property practice, but she also alleges that the firm retaliated against her years later, in 2024 and 2025. Hogan Lovells moves to dismiss, arguing that all Lamar's claims are either procedurally barred, fail to state a claim, or both. For one reason or another, the Court agrees that all her claims must be dismissed, so it will grant the motion and dismiss the case.

I.    **Background**

A.    **Factual Background**

Lamar alleges in the Amended Complaint that she is an African-American woman who began working for "Hogan Lovells US LLP" in 2015. ECF No. 25 ("Am. Compl.") ¶¶ 5, 14. She worked first as a temporary legal assistant, then as a permanent one, and eventually took on additional responsibilities as a "floor leader." *Id.* ¶ 14. In February 2018, Lamar learned about an open position for an Intellectual Property ("IP") Specialist. *Id.* ¶ 15. Lamar applied for the position and received an interview. *Id.* ¶ 17. In her interview with Hogan Lovells's IP manager Robert

Gruwell, Lamar told him that she had "ten years of prior experience as an IP Specialist." *Id.* ¶ 18. But because she had not "worked in that capacity for three years," she asked Gruwell for updated training on IP procedures if she were hired for the job. *Id.* In April 2018, Lamar was hired for the role and assigned to support a high-profile client. *Id.* ¶ 23. Both Gruwell and Lamar's team lead "assured [Lamar] that she would receive full training on all client-specific procedures . . . along with training on the IP docket management software necessary to perform the duties of the position." *Id.* ¶ 19.

As Lamar tells it, though, all did not go well in the new position. At least some of the training Gruwell and the team lead told Lamar she would receive was cancelled, and she alleges she received "no formal onboarding" before beginning the role. Am. Compl. ¶¶ 27, 47. She also did not receive access to IP docket management software that she needed to do the job. *Id.* ¶¶ 47, 73. And yet, according to Lamar, "similarly situated white" IP specialists on the same client team "received client-specific training and access to the IP docket management system at the onset of their assignment." *Id.* ¶ 47. Without this training and software access, Lamar says she was "at a continual disadvantage" within the team. *Id.* ¶ 74. Lamar also alleges that her team lead gave her "inconsistent and unclear guidance" and required her to prepare documents relying on a "limit[ed] and inaccura[te]" Excel spreadsheet, and then gave her revisions based on information "never provided to [Lamar] beforehand." *Id.* ¶¶ 89, 97–98. This information imbalance was coupled with a "significantly increased" workload to handle a "backlog" of patent filings she received in May 2018, a task she did not receive appropriate resources to complete. *Id.* ¶¶ 100–101.

By late May 2018, things got worse. Lamar allegedly "frequently copied" Gruwell on emails with her team lead, hoping for "intervention to stop [the team lead's] harassment and bullying." Am. Compl. ¶ 131. On May 31, Lamar asked to meet with Gruwell to discuss "significant

difficulties performing her assignments due to the lack of access to client specific instructions and proper IP docket management software." *Id*. ¶¶ 104–105. This request led to a "succession of meetings with" Gruwell and Lamar's team lead, but things only deteriorated for Lamar from there. *See id.* ¶¶ 109, 112. In one of those meetings, Gruwell and Lamar's team lead accused her of leaving work without completing a filing. *Id.* ¶ 112. When Lamar responded that she could not stay late because of her caregiving responsibilities for her sick spouse and special-needs child, Gruwell told her to make "sacrifices," rescinded her flexible working schedule, and told her she would have to work overtime. *Id.* ¶¶ 113–114. Lamar alleges that afterward, she was "forced to remain in the office" for "more than 10 hours a day," leading to "significant stress and anxiety." *Id.* ¶ 114. In contrast, though, two white IP specialists "were allowed to work their standard 7.5-hour day and were not required to work overtime." *Id.* ¶ 115. At another meeting on June 14, Gruwell "confronted" Lamar "with allegations of misconduct based on inaccurate claims." *Id.* ¶ 138. He then "dismissed her explanations" and "refused to allow her to leave his office until she agreed that she had done something wrong." *Id.* Gruwell supposedly told her she would "need to stop complaining and to work with the resources provided to get the work done." *Id.* ¶ 139.

On June 15, 2018, Lamar emailed Gruwell and Gruwell's supervisor, laying out her complaints about her working environment, including overtime forced on her, false accusations directed against her, her problems with Excel spreadsheets, and her heavy workload. Am. Compl. ¶ 142. Lamar also expressed her concern that she was being "unfairly targeted to the point of harassment." *Id.* Immediately after this meeting, Gruwell supposedly made several "loud and public" comments to her within earshot of coworkers, inquiring as to her wellbeing and stating that he "d[idn't] want [her] going off the rails"—comments Lamar believed were "retaliatory" and designed to "isolate her, create distrust between her and her colleagues, . . . and undermine her

professional relationships." *Id.* ¶¶ 143–144.  Also, in the aftermath of her email to Gruwell and Gruwell's supervisor, Lamar was invited to attend "training sessions" with Gruwell and her team lead.  *Id.* ¶ 149.  But, she alleges, no training was provided.  *Id.*  Instead, these sessions were chances to "continue the prior pattern of harassment" against her.  *Id.* ¶ 154.  Gruwell and her team lead used the sessions to "berat[e]" her for other perceived faults in her work product, including for printing out a five-page document on the office printer.  *Id.* ¶¶ 149–151.

Things came to a head in July 2018, when, after Lamar "inadvertently copied" the high-profile client "on an email exchange," Hogan Lovells removed her from her position as an IP specialist.  Am. Compl. ¶ 178.  She was "not reassigned to another role for several months," though she continued working at the firm.  *Id.* ¶¶ 192–193.  After filing a "formal Complaint" with the firm's Human Resources department, the head of Human Resources assisted Lamar in finding a new position and, in December 2018, she was re-hired into her previous role as an assistant.  *Id.* ¶¶ 177, 193.  She did not "want to return" to that job, but "believed she was being discriminated against and effectively 'pushed out'" of the IP Specialist role.  *Id.* ¶ 177.

Six years passed, during which Lamar initiated the administrative proceedings against Hogan Lovells that are described in further detail below.  Then, in late 2024, while still working at Hogan Lovells as an assistant, Lamar asserts that she was again retaliated against for her prior protected activity.  In December 2024, Lamar applied for a position as a Practice Specialist at the firm.  Am. Compl. ¶ 299.  She received an interview, but then discovered that "all three [Specialist] positions had already been filled" and with employees that had "less experience."  *Id.* ¶¶ 301, 306.  Moreover, one of the newly promoted employees expressed surprise to Lamar that Lamar had needed to formally apply for the position, since the other employee "didn't have to apply."  *Id.* ¶ 300.  Lamar ended up receiving a promotion to an Executive Assistant position, a role for which

she had "neither applied nor expressed interest" and which carried a lower salary cap than the Practice Specialist job. *Id.* ¶ 298. Lamar alleges that, by "denying her promotion" to the Practice Specialist role, Hogan Lovells retaliated against her for making claims against it in 2018. *Id.* ¶¶ 304–306.

### B.    Procedural Background

Lamar first instituted administrative proceedings against Hogan Lovells before the District of Columbia Office of Human Rights ("DCOHR") in April 2019. On April 14, she completed an online intake questionnaire, indicating that she had been "discriminated against based on race, family responsibilities, unfair employment practices, retaliation, and sabotage, unfair removal of [her] position and demotion." ECF No. 16-1 at 20.[1] Under a section titled "Issues: What action was taken that made you feel you were treated differently," Lamar indicated: "Hostile Work Environment[,] Retaliation[,] Family Medical Leave[,] Sexual Harassment[,] Discipline[,] Demotion[,] [and] Discharge. *Id.* at 18.

Several months later, Lamar filed a formal Charge of Discrimination with DCOHR, which she dated December 26, 2019.[2] *See* ECF No. 11-1 at 2. This document, unlike the intake questionnaire, stated it would be sent to the DCOHR and the EEOC. *Id.* In it, Lamar "charge[d]

---

[1] Because Lamar proceeds pro se, in deciding Hogan Lovells's motion to dismiss, the Court must consider the factual allegations in all her filings, not just the Amended Complaint, including the DCOHR intake questionnaire she appended to her opposition to Hogan Lovells's motion. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); ECF No. 16-1.

[2] In deciding the motion, the Court also considered certain documents appended to it, including Lamar's Charge of Discrimination filed with DCOHR, ECF No. 11-1, DCOHR's Letter of Determination, ECF No. 11-2, and DCOHR's Order on Request for Reconsideration, ECF No. 11-3. The Court may do so because Lamar incorporates each document into her complaint by reference, the authenticity of the documents is not in dispute, and they are central to her allegations. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); Am. Compl. ¶¶ 7, 117 (Charge of Discrimination); ¶¶ 9, 49, 55, 112 (Letter of Determination); ¶ 200 (Order on Request for Reconsideration).

[Hogan Lovells] with unlawful discriminatory acts in violation of Title VII . . . and the D.C. Human Rights Act," raising claims she characterized as disparate treatment based on her race and retaliation. *Id*. Following an investigation, DCOHR released a Letter of Determination on February 27, 2023, which concluded that there was no probable cause to proceed against Hogan Lovells. ECF No. 11-2. Lamar requested reconsideration, and DCOHR issued an Order on Request for Reconsideration, which reached the same conclusion, in March 2025. ECF No. 11-3.

Lamar filed this suit in July 2025. ECF No. 1. Hogan Lovells moved to dismiss, and in response, Lamar amended her complaint. ECF Nos. 8, 10. Her Amended Complaint brings six counts against Hogan Lovells. The facts underlying Counts One, Two, Four, Five, and Six—all but Count Three—stem from the 2018 period when Lamar worked as an IP specialist on the high-profile client's team. Am. Compl. ¶¶ 266–291, 311–350. Somewhat confusingly, within each of Counts One, Two, Four and Five, Lamar asserts claims under three different civil rights statutes: Title VII, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1301.01 *et seq*. *See id.* Under all three statutes, Count One alleges racial discrimination; Count Two alleges retaliation; Count Four alleges a hostile work environment; and Count Five alleges constructive demotion. *Id.* In contrast, in Count Six—which alleges disparate impact discrimination—Lamar asserts claims under only two of the three: Title VII and the DCHRA. *Id.* ¶¶ 334–350.

Count Three, as referenced above, is not based on alleged conduct that happened in 2018 while Lamar worked as an IP specialist. It alleges, under Title VII, § 1981, and the DCHRA, that Hogan Lovells retaliated against Lamar when, in 2024 and 2025, it denied her a promotion to the Practice Specialist position. Am. Compl. ¶¶ 292–310.

Soon after Lamar amended the complaint, Hogan Lovells moved to seal parts of both

complaints, arguing that Lamar had divulged privileged information by revealing the name of the high-profile client she worked for and certain details about that work. ECF No. 15. Lamar opposed. ECF No. 20. The Court, after considering the factors set out in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), granted the motion. ECF No. 23. While considering that "as this case proceeds, the *Hubbard* factors may well shift in favor of disclosure," it ordered both complaints to be placed under seal and directed the Clerk of Court to docket a redacted version of the Amended Complaint. *Id.* at 1.

Hogan Lovells now moves to dismiss. ECF No. 11. It argues that Counts One, Two, Four, Five, and Six—all based on Hogan Lovells's alleged conduct in 2018—are procedurally barred: the Title VII and § 1981 claims because of statutes of limitations, and the DCHRA claims based on the election of remedies doctrine. Hogan Lovells also argues that Count Three fails because its Title VII claims were not administrative exhausted and its § 1981 and DCHRA claims fail to state a plausible claim for retaliation.

## II.    Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a facially plausible claim when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts as true "all well-pleaded factual allegations" and "construes reasonable inferences from those allegations in the plaintiff's favor." *Sissel v. HHS*, 760 F.3d 1, 4 (D.C. Cir. 2014). But "mere conclusory statements" are not enough to establish a plausible claim, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Because Lamar proceeds *pro se*, the Court must construe her filings liberally. *See Bowman v.*

*Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017) (citation omitted). But this courtesy does not absolve her of the need to plead facts that plausibly establish a claim for relief. *See Bickford v. United States*, 808 F. Supp. 2d 175, 179–80 (D.D.C. 2011).

## III.    Analysis

### A.    Counts One, Two, Four, Five, and Six Are Procedurally Barred

In these five counts, Lamar alleges that when she worked as an IP specialist in 2018, Hogan Lovells discriminated against her based on her race, created a hostile work environment, retaliated against her, and constructively demoted her. Am. Compl. ¶¶ 266–291, 311–350. As described above, each count is brought under some combination of Title VII, § 1981, and the DCHRA. *See id.* Hogan Lovells raises procedural challenges to each of these Counts: first, it argues that the Title VII and § 1981 claims in Counts One, Two, Four, Five, and Six are time-barred for several reasons. ECF No. 11 at 12–14. Next, it argues that Lamar's DCHRA claims in those same Counts are barred due to that statute's "election of remedies" provision. *Id.* at 14–16. For the reasons explained below, the Court agrees, and so it will dismiss Counts One, Two, Four, Five, and Six in their entirety.

### 1.    Lamar's Title VII Claims Are Time-Barred

Before suing her employer in federal court, a Title VII plaintiff must file a charge against the employer with either the EEOC or an equivalent state or local agency. 42 U.S.C. § 2000e-5(e)(1). If she has first initiated proceedings in a state or local agency, a plaintiff must file her charge with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." *Id.* Lamar's Title VII claims in Counts One, Two, Four, Five, and Six fail because she did not meet the statute's 300-day deadline to file her charge with the EEOC.

Lamar filed her charge of discrimination with DCOHR—which was cross-submitted to the EEOC through the agencies' work-sharing agreement—on December 26, 2019. ECF No. 11-1.

8

Under "Date(s) Discrimination Took Place," Lamar listed "11/2018" as the latest date. *Id.* at 2. Thus, to have timely filed, Lamar needed to have filed her EEOC charge by September 25, 2019. She missed that date by over three months, and thus her Title VII claims in Counts One, Two, Four, Five, and Six are time-barred.

In response, Lamar argues that the Court should consider her EEOC charge of discrimination to have been filed as of April 10, 2019, the date on which she filled out an intake questionnaire on DCOHR's website. ECF No. 16 at 20; *see* ECF No. 16-1 at 14–20. Lamar argues that *this* was the date on which she "filed a charge of discrimination" with DCOHR, which was then "cross-filed with the EEOC." ECF No. 16 at 20. She claims that the December 2019 charge merely "verified th[e] charge" she had filed in April, or perhaps amended it, and she points out that "EEOC regulations expressly allow later verification, and such amendments relate back to the original filing date." *Id.* (citing 29 C.F.R. § 1601.12(b)).

Unfortunately for Lamar, this argument is foreclosed by the D.C. Circuit's guidance that, under Title VII, an "Intake Questionnaire is not a Charge of discrimination" through which a plaintiff can satisfy Title VII's 300-day deadline. *Dyson v. District of Columbia*, 710 F.3d 415, 418 (D.C. Cir. 2013). True, the Circuit in *Dyson* was considering the *EEOC's* intake questionnaire, not that of a state agency like DCOHR. But that distinction makes no discernable difference, and other courts in this District have applied *Dyson*'s guidance to DCOHR's online intake questionnaire. *Ross v. Georgetown Univ.*, No. 18-cv-671 (ABJ), 2019 WL 2452326, at *5 (D.D.C. Jun. 12, 2019).

On top of that, even if an intake questionnaire could be considered a charge of discrimination under Title VII, Lamar has not plausibly alleged that the EEOC—rather than the DCOHR—was ever sent or received her intake questionnaire. The court in *Ross*, in concluding that the intake

questionnaire in that case was not an EEOC charge, noted that the EEOC had labeled the plaintiff's actual charge with a 2016 docket number, while the plaintiff had filled out the intake questionnaire in 2015. *See Ross*, 2019 WL 2452326, at *5. Thus, it found that "as far as the [EEOC] was concerned, the charge was not filed in 2015," and therefore the DCOHR intake questionnaire was not a "charge for purposes of Title VII." *Id*. The same logic applies here. Lamar's EEOC charge was docketed with a "2020" date. ECF No. 11-1 at 2 ("EEOC 10C-2020-00094"). Thus, as far as the EEOC is concerned, it could not have been filed by September 25, 2019. Indeed, this docket number suggests that Lamar's formal charge was only cross-filed with the EEOC when she submitted it to the DCOHR in the last week of December 2019—and it was then received by the EEOC the next week. In addition, the DCOHR described December 26, 2019 as the charge-filing date in its Letter of Determination and in its Order on Reconsideration. *See* ECF No. 11-3 at 2 ("Charge of Discrimination, dated December 26, 2019"); ECF No. 11-2 at 3 (same). And it is only Lamar's formal charge—and not her earlier intake questionnaire—that contains any suggestion that she "want[ed] this charge filed with both the EEOC and the [DCOHR]."[3]  ECF 11-1 at 2.

To support her claim that her DCOHR intake questionnaire was a timely EEOC charge, Lamar also points to an EEOC regulation, 29 C.F.R. § 1601.12(b), and a Supreme Court's decision interpreting it, *Edelman v. Lynchburg College*, 535 U.S. 106 (2002). ECF No. 16 at 20. Neither help her.

First, it is true that under that regulation, when the EEOC "receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally

---

[3] True, as the *Ross* court pointed out, a "plaintiff need only file a 'complaint' with the DCOHR," to begin proceedings under the DCHRA. 2019 WL 2452326, at *5 (quoting DCOHR, "File A Discrimination Complaint," https://ohr.dc.gov/service/file-discrimination-complaint); D.C. Code § 2-1403.04. But that does not mean it is a charge under Title VII, especially given *Dyson*'s guidance to the contrary. 710 F.3d at 418.

the action or practices complained of," that constitutes a charge, even if it is missing other details. 29 C.F.R. § 1601.12(b). And once the EEOC receives such a charge, it can be "amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." *Id.* But the problem is, as described above, that no evidence suggests that the EEOC was ever sent or received Lamar's DCOHR intake questionnaire—or that, if the EEOC did receive it, the EEOC treated it as a charge of discrimination. Lamar's arguments to the contrary are the type of "mere conclusory statements" on which the Court may not rely. *Iqbal*, 556 U.S. at 678.

Second, the Court acknowledges that *Edelman* upheld the relation-back scheme codified in § 1601.12(b). *See* 535 U.S. at 118. But the Supreme Court expressly declined to reach the question of exactly what constitutes a charge of discrimination, and it left for the court below to decide whether a letter the plaintiff's lawyer had sent to the EEOC sufficed as one. *See id.* Thus, in light of *Dyson*'s guidance that an "Intake Questionnaire is not a Charge of discrimination," 710 F.3d at 418, and the lack of evidence that the EEOC was ever sent or received Lamar's DCOHR intake questionnaire, Lamar still comes up well short.[4]

For all these reasons, Lamar's Title VII claims in Counts One, Two, Four, Five, and Six are time-barred.

---

[4] Lamar also argues that, because timeliness is an "affirmative defense," a statute of limitations argument "cannot justify dismissal under Rule 12(b)(6)." ECF No. 16 at 17. Not so. Affirmative defenses may be raised—and decided—in response to a motion to dismiss under Rule 12(b)(6) without converting the motion into one for summary judgment when the relevant facts are clear from the fact of the complaint and from other documents the Court may consider. *See Featherston v. District of Columbia*, 910 F. Supp. 2d 1, 4 n.1 (D.D.C. 2012).

### 2.    Lamar's § 1981 Claims Are Time-Barred

Lamar also brings a § 1981 claim in each of Counts One, Two, Four, and Five (but not Six). For the reasons explained below, each is time-barred because Lamar did not file this suit within the applicable statute of limitations.

Section 1981 claims are governed either by the four-year catch-all federal statute of limitations, 28 U.S.C. § 1658, or else by the "most appropriate or analogous" state equivalent to a § 1981 claim, *see Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987). Here, that is three years. *See Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir. 1998). Whether the three-year state equivalent or four-year statutory bar applies in a given case turns on a fact-specific question about whether the plaintiff's cause of action "was made possible by a post-1990 enactment"—that is, after the enactment of § 1658. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). In any event, the Court need not resolve which applies here. In either case, Lamar's § 1981 claims—which she first brought in this case nearly *seven* years after the conduct at issue happened—are untimely.

Lamar's argument to the contrary is unavailing. She argues that the statute of limitations is not an issue because the "continuing violation doctrine" makes "earlier acts . . . actionable when they are connected to timely adverse acts." ECF No. 16 at 21. She argues that Hogan Lovells subjected her to a "continuous pattern of discrimination and retaliation" extending into 2025. *Id.* In particular, she says she was "denied advancement to the Practice Specialist role" in 2024 to 2025 while others in her role were promoted without having to apply. *Id.* at 23. She also contends that Hogan Lovells's 2021 position statement in her DCOHR case was a form of retaliation, since it "repeated and expanded on false allegations," and "carried forward accusations dating back to 2018 and 2019, thereby extending them into the four-year limitations window." *Id.* at 35.

12

Even assuming that the continuing violation doctrine applies to § 1981 claims, though—and Lamar identifies no case reflecting that proposition—Lamar's argument fails. The Supreme Court has held that the continuing violation doctrine does not cover "discrete acts" of discrimination, such as "termination, failure to promote, denial of transfer, or refusal to hire" in a Title VII case. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Such acts, which are "easy to identify," each "constitute[] a separate actionable 'unlawful employment practice,'" and a plaintiff may "only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Id.* at 114. And so Counts One, Two, and Five—which allege discrete acts of discrimination, retaliation, and constructive demotion in 2018—are untimely, and the continuing violation doctrine does not cure this defect.

That said, in *Morgan*, the Court *did* leave the door open for hostile work environment claims brought outside the statute of limitations to be deemed timely brought when "all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." 536 U.S. at 122. But this part of the *Morgan* decision does not help Lamar either. Count Four alleges that Hogan Lovells subjected Lamar to a hostile work environment in 2018, but Lamar does not allege—in either her Amended Complaint or her briefing—facts suggesting that it continued into the following years, such that it could be considered timely brought within the statute of limitations through this case.[5] *See* Am. Compl. ¶ 312.

---

[5] Lamar also does not argue that the hostile work environment did not become clear to her until after the statute of limitations had elapsed due to the "cumulative impact" on ongoing violations. *Loumiet v. United States*, 828 F.3d 935, 948 (D.C. Cir. 2016). Nor could she, because her DCOHR intake questionnaire makes clear that she believed she had been subject to a hostile work environment as early as 2019. *See* ECF No. 16-1 at 18. And she alleges in Count Four that "[t]he hostile work environment . . . ultimately aggrieved [her] to the point where she felt her only option was to resign" from the Specialist role and "return to her former position." Am. Compl. ¶ 315.

13

For these reasons, Lamar's § 1981 claims in Counts One, Two, Four and Five are all barred by the statute of limitations.

### 3.   Lamar's DCHRA Claims Are Barred by the Election of Remedies

Lamar brings DCHRA claims in Counts One, Two, Four, Five, and Six.  These claims are barred by the DCHRA's election of remedies doctrine.

At all relevant times, the DCHRA contained a procedural bar called the "election of remedies."[6]  *Felton v. Nat'l Ass'n of Soc. Workers*, 305 A.3d 767, 769 (D.C. 2023); D.C. Code § 2-1403.16(a) (2015).  The election of remedies doctrine limited litigants with DCHRA claims to a single merits hearing, in either an administrative or judicial proceeding.  Thus, "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice [had] a cause of action in any court of competent jurisdiction . . . unless such person [had] filed a complaint" with DCOHR.  D.C. Code § 2-1403.16(a) (2015).  And if DCOHR proceeded to the merits of a complaint—that is, the complainant had not "withdrawn [the] complaint" and the office had not "dismissed such complaint on the grounds of administrative convenience"—a complainant was precluded from also bringing suit in federal or state court.[7]  *Id.; see also Carter v. District of Columbia*, 980 A.2d 1217, 1223 (D.C. 2009).  In other words, "the jurisdiction of the court and DCOHR are mutually exclusive in the first instance, such that where one opts to file with DCOHR, he or she generally may

---

[6] The DCHRA was amended in 2025—effective on March 20, 2025—to remove the election of remedies provision.  *See* D.C. Code § 2-1403.16.  Neither party addresses the effect of this amendment, but there is no reason to think that change applies retroactively in this case.  Retroactivity of a District of Columbia statute is "not to be presumed absent express legislative language or other clear implication that such retroactivity was intended."  *Lane v. D.C. Dep't of Hous. & Cmty. Dev.*, 320 A.3d 1044, 1047 (D.C. 2024) (quotation omitted).  Rebutting that presumption requires "clear intent," which is absent here.  *Id.* at 1048 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994)); *see* D.C. Code § 2-1403.16 (containing no discussion of retroactivity).

[7] The DCHRA also provided for judicial review of DCOHR decisions in the D.C. Court of Appeals.  D.C. Code § 2-1403.14 (2015).

not also file a complaint in court." *Felton*, 305 A.3d at 769 (citation modified); *see also Savage v. District of Columbia*, No. 18-cv-2007 (TJK), 2019 WL 6701409, at *2 (D.D.C. Dec. 9, 2019).

By the time Lamar sued, DCOHR had already fully considered—and reconsidered—the merits of her DCHRA claims. *See* ECF No. 11-2; ECF No. 11-3 at 2, 15. Thus, the DCHRA's election of remedies bar precludes her claims in this Court.

Lamar's argument to the contrary rests on her bald claim that the election of remedies bar "does not apply where, as here, the OHR process has been completed and the EEOC has issued a Notice of Right to Sue." ECF No. 16 at 18. But the authorities Lamar cites for this proposition do not support her argument: in *Briscoe v. Costco Wholesale Corporation*, the court did not discuss the election of remedies doctrine at all or indicate whether the plaintiff pursued an administrative hearing before DCOHR. *See generally* 61 F. Supp. 3d 78 (D.D.C. 2014). And *Harris v. District of Columbia Water and Sewer Authority* does not involve any claim brought under the DCHRA, so it is no help either. *See generally* 791 F.3d 65 (D.C. Cir. 2015). Lamar also argues that the work-sharing agreement between DCOHR and the EEOC means that the DCHRA's "jurisdictional bar" only applies before the EEOC issues a Notice of Right to Sue. ECF No. 16 at 19 n.3. She argues that this distinguishes her case from *Carter* and *Savage* because here "OHR concluded its process, reconsideration was denied, and the EEOC authorized suit." *Id.* at 18. But Lamar confuses a statutory prerequisite for initiating a suit under Title VII (the EEOC right to sue letter) with a state law statutory bar contained in the DCHRA. In the end, she offers no reason to doubt that the DCHRA's election of remedies doctrine bar applies to bar this Court's review of the same claims that the DCHRA has already decided on the merits.

For these reasons, the election of remedies doctrine bars the DCHRA claims in Counts One, Two, Four, Five, and Six.

**B.      Lamar's Claims in Count Three are Administratively Exhausted (Title VII) or Fail to State a Claim (§ 1981 and DCHRA)**

Count Three is the only one left, and like some of the others it encompasses claims brought under Title VII, § 1981, and the DCHRA.  As described above, Count Three is based on factual allegations from a different time than the others.  In it, Lamar alleges that Hogan Lovells retaliated against Lamar in 2024 and 2025 because of the protected activity she engaged in years beforehand.  But Lamar has not administratively exhausted these Title VII claims and the § 1981 and DCHRA allegations fail to state a claim.  So the Court must dismiss Count Three as well.

**1.      Count Three's Title VII Claim is Not Administratively Exhausted**

Lamar's Title VII claim in Count Three fails because she failed to exhaust administrative remedies.  Recall that Title VII requires that a plaintiff must exhaust administrative remedies by "timely filing . . . a charge with the EEOC or a state agency" before suing.  *Jones v. District of Columbia*, 273 F. Supp. 2d 61, 64 (D.D.C. 2003); *see* 42 U.S.C. § 2000e-16(c).  Then a plaintiff must receive "a 'right to sue' letter" from the EEOC.  *Jones*, 273 F. Supp. 2d at 64.  Furthermore, a plaintiff may only bring a Title VII lawsuit raising those claims which the plaintiff raised in the EEOC complaint—or claims that are "like or reasonably related" to such claims.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted).[8]  The requirement to file an EEOC claim "serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision.'"  *Id.* (quoting *Laffey v. Nw. Airlines, Inc.*, 721 F.2d 429, 472 n.325 (D.C. Cir. 1976)).

---

[8] The *Park* exception to the exhaustion requirement has come under some fire after *Morgan*, which some courts have construed to preclude an exception for "like or reasonably related" claims that are not separately exhausted.  *See Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 n.1 (D.C. Cir. 2019) (noting the open question after *Morgan* but declining to decide the validity of *Park*, since the plaintiff "[could] not even meet the standard set forth in *Park*").  But for the reasons explained, the Court need not determine to what extent *Park* survives *Morgan*.

Administrative exhaustion of a Title VII claim is an affirmative defense that the defendant "bears the burden of pleading and proving." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Once the defendant has met its burden, the plaintiff then "bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Id.* Failure to exhaust remedies is a failure to state a claim under Rule 12(b)(6). *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 18 (D.D.C. 2015).

Hogan Lovells argues that in Lamar's charge of discrimination—filed in December 2019—she makes no mention of the retaliation she alleges in Count Three. Of course, that makes sense, because Lamar filed the charge five years before that retaliation allegedly happened. Lamar does not assert that she either filed a new EEOC charge to exhaust these retaliation claims or amended her charge to include them. Indeed, in her opposition, Lamar does not address Hogan Lovells's administrative exhaustion argument at all. For this reason, the Court treats this argument as conceded and finds that Lamar has not exhausted her administrative remedies for her Title VII claims in Count Three.

### 2.    Count Three Does Not State a Claim Under § 1981 or the DCHRA

Lamar also brings § 1981 and DCHRA claims in Count Three based on the same allegations of retaliation that she says happened in 2024 and 2025. Count Three fails to state a claim on either front.

To state a prima facie case of retaliation under § 1981, "a plaintiff must show: (1) that [s]he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against [her]; and (3) that the employer took the action 'because' the employee opposed the practice." *Harris*, 791 F.3d at 68 (internal quotation omitted). The standard for a DCHRA claim is nearly identical. There, a plaintiff must establish that "(1) [s]he was engaged in a protected

activity or that [s]he opposed practices made unlawful by the DCHRA, (2) the employer took an adverse action against [her], and (3) a causal connection existed between [her] opposition or protected activity and the adverse action taken against [her]." *Propp v. Counterpart Int'l*, 39 A.3d 856, 863 (D.C. 2012). On this last prong, the DCHRA requires only that the protected activity be a "substantial contributing factor" to the adverse action. *District of Columbia v. Bryant*, 307 A.3d 443, 451 (D.C. 2024).

Filing a complaint with the EEOC or DCOHR is a protected activity. *See* 42 U.S.C. § 2000e-3(a); D.C. Code § 2-1402.61. But even assuming that Lamar suffered an adverse action in 2024 or 2025, she fails to plausibly allege a causal connection between this protected activity years beforehand and any such adverse action. True, Lamar alleges that the failure to promote her to a Practice Specialist role in 2024 and 2025 occurred "in close connection with [her] prior protected activity" and therefore "reflected a continuing retaliatory campaign" by the firm. Am. Compl. ¶ 308. But Lamar alleges no facts to back up this contention. Instead, it is the sort of barebones, conclusory allegation that is not enough to plausibly allege a claim of retaliation.

Nor does Lamar argue—as she does with respect to other of her claims for retaliation—that the Court could infer causation based on a close temporal connection between the protected activity and alleged retaliation. Doing so would not have helped her, because a temporal connection close enough to plausibly infer causation is measured in months, not years. *See Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (two and a half months too long); *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (holding that a 20-month period was "no causality at all," and citing approvingly cases holding three- and four-month periods too long).

The result is the same under the DCHRA, even given the more lenient causation test there. Temporal proximity between protected activity and alleged retaliation is one way to show

causation under that statute. But again, cases invariably require much shorter time between the two. *See Sonmez v. WP Co. LLC*, 330 A.3d 285, 331 (D.C. 2025) (five months too long); *Vogel v. D.C. Off. of Plan.*, 944 A.2d 456, 462 (D.C. 2008) (six months too long); *Johnson v. District of Columbia*, 935 A.2d 1113, 1120 (D.C. 2007) (four months too long).

For these reasons, the Title VII, § 1981, and DCHRA claims in Count Three are either unexhausted or fail to state a claim.

## IV.    The Court Will Deny Lamar's Motion for Leave to File a Surreply

After Hogan Lovells's motion to dismiss was fully briefed, Lamar moved for leave to file a surreply. ECF No. 22. "The decision to grant or deny leave to file a surreply is committed to the sound discretion of the court." *Schmidt v. Shah*, 696 F. Supp. 2d 44, 59 (D.D.C. 2010). Courts may grant leave to file a surreply "when the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 657 F. Supp. 2d 104, 108 (D.D.C. 2009), *aff'd*, 383 F. App'x 1 (D.C. Cir. 2010) (internal quotation marks omitted). But courts disregard "matters raised for the first time" in a surreply. *Id*.

The Court will deny Lamar leave to file her surreply. First, as far as the Court can see, it does not address anything that Hogan Lovells first raised in its reply to which Lamar would have been unable to respond without a surreply. Second, the proposed surreply raises several new arguments for the first time, such as requesting that the Court equitably toll the statute of limitations on her Title VII claims. ECF No. 22-1 at 3. The Court need not entertain such new arguments; even "[a]rguments raised for the first time in a reply brief are waived." *Nippon Shinyaku Co., Ltd. v. Iancu*, 369 F. Supp. 3d 226, 239 n.8 (D.D.C. 2019), *aff'd*, 796 F. App'x 1032 (Fed. Cir. 2020). And third, in the end nothing in the surreply calls into question any part of the Court's above analysis that requires the case to be dismissed.

In any event, even if the Court were to consider her tolling argument, it would fail. Equitable tolling is appropriate "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). And though the Court sympathizes with Lamar's mistaken belief that her submission of a DCOHR online intake questionnaire constituted a formal charge with the EEOC, that is not the sort of "extraordinary circumstance" that warrants equitable tolling, even considering Lamar's pro se status. *See Dyson*, 710 F.3d at 418–19 (finding equitable tolling not warranted in case of appellant who mistakenly believed her intake questionnaire was a charge of discrimination); *see also Strong-Fischer v. Peters*, 554 F. Supp. 2d 19, 24–25 (D.D.C. 2008) (collecting cases).

Finally, the Court notes that Lamar's proposed surreply contains citations to two cases that do not appear to exist: "*Roche v. District of Columbia*, 197 F. Supp. 3d 68 (D.D.C. 2016)" and "*Murphy* v. *D.C. Water & Sewer Auth.*, 480 F. Supp. 2d 9, 20 (D.D.C. 2007)." ECF No. 22-1 at 3, 11. Lamar is admonished that "all litigants," even those proceeding pro se, "have an obligation to comply with Rule 11, which imposes an affirmative duty to . . . verify[] that every citation" made to the Court "is real," however it was located. *Rubio v. District of Columbia*, No. 23-cv-719 (RDM), 2024 WL 4957373, at *4 (D.D.C. Dec. 3, 2024) (citing Fed. R. Civ. P. 11(b)(2)).

## V.    Conclusion

For all the above reasons, the Court will grant Hogan Lovells's motion and dismiss the case. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 8, 2026